**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATRINA JOCHAN, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, CALLFIRE, INC. d/b/a EZ TEXTING and DOES 1-10, INCLUSIVE, | ) ) ) ) | CLASS ACTION  JURY TRIAL DEMANDED |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Katrina Jochan ("Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned counsel, complains against Defendants State Farm Mutual Automobile Insurance Company, CallFire Inc., d/b/a Ez Texting and Does 1-10, inclusive ("Does"), (collectively "Defendants") as follows based upon the investigation of her counsel and otherwise upon information and belief, except as to allegations specifically pertaining to herself, which are based upon her personal knowledge:

### I.     NATURE OF ACTION

1.     Plaintiff brings this action for damages and other legal and equitable remedies, resulting from the actions of Defendants in negligently, knowingly, and/or willfully sending marketing text messages to Plaintiff's and other class members' telephone numbers assigned to a telephone service ("cellphones")[1] using an automatic telephone dialing system ("ATDS"), without their express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

---
[1] See 47 U.S.C. § 227(b)(1)(A)(iii)

## II.     JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

3.      Personal jurisdiction over Defendants is proper under 735 ILCS 5/2-209 insofar as such jurisdiction is permitted by the Constitution of the State of Illinois and the Constitution of the United States.  Specifically, Defendants have done business or caused an event to occur in this state, as alleged herein, out of which Plaintiff's claims arise, and exercise of personal jurisdiction over Defendants is consistent with requirements of due process clause of the Fourteenth Amendment.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this District including, *inter alia*, the transmission of the unsolicited text messages that are the subject of this Complaint to Plaintiff and other class members located in this District.

## III.     PARTIES

5.      Plaintiff, Katrina Jochan, is a natural person residing in Elmwood Park, Illinois, and is a member of the class defined herein.

6.      Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") is a property and casualty mutual insurance company organized under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois.  As alleged herein, State Farm sent marketing text messages to Plaintiff and other members of the class defined herein in violation of federal law.

7.      Defendant, CallFire, Inc., d/b/a EZ Texting ("CallFire"), is a corporation organized under the laws of the State of Delaware with its principal place of business in Santa

-2-

Monica, California.  As alleged herein, CallFire sent marketing text messages to Plaintiff and other members of the class defined herein in violation of federal law.

8.      The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

9.      Each of the Defendants was the actual or apparent agent, employee or representative of each of the other Defendants.  Each Defendant, in doing the acts or omitting to act as alleged in this Complaint, was acting in the course and scope of its actual or apparent authority pursuant to such agencies; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each agent as principal.

## IV.      BACKGROUND

### A. The Telephone Consumer Protection Act of 1991 and the FCC's 2012 Order

10.      In a 2012 Order ("2012 TCPA Order"), the Federal Communications Commission ("the Commission") took steps to further protect consumers from unwanted commercial text messages pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA").  Among other things, the rules the Commission adopted were intended to protect consumers from unwanted marketing text messages, sometimes referred to as "wireless spam."[2]

---

[2]   The FCC extended the TCPA to include SMS text messaging in 2003.  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14115, ¶ 165 (2003).

11.     In the *2012 TCPA Order*, the Commission concluded that a consumer's written consent to receive a text message (or call) using an ATDS to a wireless number must be signed to be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer is willing to receive future text messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such text messages at a telephone number the consumer designates.[3]

12.     In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."[4]

13.     Finally, the seller bears the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.[5]

**B.     State Farm's Text Message Advertising Campaign**

14.     Notwithstanding the prohibitions of the TCPA, upon information and belief, beginning in at least May 2014, defendant State Farm, through its employees, agents or authorized representatives, caused text messages to be sent to Plaintiff and the Class in violation of the TCPA as part of its marketing aimed at prospective automobile insurance policyholders.

15.     State Farm's strategy consisted of sending text messages to prospective policyholders, using their first names, under the guise that the recipient had inquired about coverage previously:

> [NAME], this is Dan from State Farm! Your auto insurance is coming up for renewal . . . Can I text you our price and mirror your current coverages?!?

---

[3] *See 2012 TCPA Order*, 27 FCC Rcd at 1844, para 33.

[4] *Id.*

[5] *Id.*

16.     The above-described messages were sent using an automatic telephone dialing system ("ATDS"), based on the generic content of the text messages, the impersonal advertising content of the message delivered by Defendants who otherwise had no reason to contact Plaintiff, the existence of similar text messages received by other Class members and the use of the number "313-131," which is an abbreviated telephone number known as an SMS short code, that upon information and belief, is owned by defendant CallFire, a text message marketing company.  A true and correct image of the text message appears below:





17.     While direct evidence of the type of dialing system used in possession, custody or control of Defendants, based on the foregoing and the generic content of the message and

Plaintiff's own lack of business dealings with State Farm, a reasonable inference can be drawn that an ATDS was used.

18.     The sender acted with the apparent and/or actual authority of State Farm, who gave it authority to use the State Farm trade name, trademark and/or service mark, including in connection with the text message marketing campaign described herein. Upon information and belief, State Farm actively participated in the transmission of the text messages described herein through its own actions and/or the action of its agents.

19.     State Farm ratified the conduct of the sender of such text messages by accepting the benefits thereof, including but not limited to accepting its share of revenue derived from any resulting sales, and otherwise encouraging, participating in or failing to take steps to curtail their unlawful acts, notwithstanding its ability to do so. Upon information and belief, if a recipient of one of State Farm's junk texts replied, a process was begun whereby he or she would ultimately receive an insurance rate quote from State Farm, who would in turn issue the policy.

20.     *Class Definition.*  Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All persons in the United States or its Territories to whom State Farm Mutual Automobile Insurance Company, CallFire, Inc., and/or their respective agents or employees sent non-emergency SMS text messages advertising State Farm products or services from the short code 313-131, on or after October 16, 2013, without such persons' express written consent.

21.     Excluded from the Class are Defendants and any of their officers, directors or employees, Class counsel, the presiding judge and members of their immediate families. Plaintiff hereby reserves her right to amend the above class definition based on discovery and the proofs at trial.

-6-

22.   *Numerosity.*   The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable. Plaintiff believes that there are more than one hundred persons in the Class.  The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

23.   *Commonality.*   There are questions of law or fact common to the Class including, *inter alia*, the following:

i.   Whether the text messages described herein were sent by Defendants or by someone on acting on their behalf;

ii.   Whether the text messages described herein were sent using an ATDS;

iii.   Whether the text messages described herein contained non-emergency messages;

iv.   Whether Defendants maintain records of the consent of Plaintiff or other Class members to receive the text messages described herein;

v.   Whether the above-described records, if any, constitute express written consent within the meaning of the TCPA;

vi.   Whether the text messages described herein are exempt from the provisions of the TCPA;

vii.   The number of text messages sent to Plaintiff and other Class members and the statutory measure of damages;

viii.   Whether the conduct of Defendants alleged herein was knowing or willful within the meaning of the statute; and

-7-

ix.     Whether Plaintiff and the members of the Class are entitled to damages and the appropriate measure thereof.

24.     *Typicality.*  The claims of Plaintiff are typical of the claims of the Class alleged herein.  Plaintiff and other members of the Class are all persons in the United States or its Territories to whom State Farm and/or its agents sent SMS text messages from the short code 313-131 during the applicable statute of limitations without the recipient's express written consent.

25.     *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

26.     *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendants have acted or have refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

27.     Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

28.     Defendants' uniform common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

29.     *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

-8-

30.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

31.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## V.  CAUSES OF ACTION

### COUNT I

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*)**

32.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if  fully set forth herein.

33.     Each Defendant, in doing the acts or omitting to act as alleged in this Count, was acting in the course and scope of its actual or apparent authority pursuant to such agencies; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each agent as principal.

34.     At all times relevant, Plaintiff was a natural person residing in the State of Illinois.

35.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

36.     Defendants are, and at all times mentioned herein were "person(s)", as defined by 47 U.S.C. § 153(10).

37.     Notwithstanding the fact that they did not give their express written consent to be texted, Defendants sent numerous non-emergency text messages to the cellphones used by Plaintiff and other Class members.

-9-

38.     The text messages sent by Defendants to the cellphones used by Plaintiff and the Class were made using an "automatic telephone dialing system," or "ATDS", as defined by 47 U.S.C. § 227(a)(1), as such messages were made by a machine with the capacity to store and produce random telephone numbers.

39.      Direct evidence of Defendants' use of an ATDS is within the sole possession of Defendants at this stage of the proceedings.  Nonetheless, a reasonable inference can be drawn that the text messages described herein were delivered by an ATDS based on the generic content of the text messages, the impersonal advertising content of the message delivered by Defendants who otherwise had no reason to contact Plaintiff, the existence of similar text messages received by other Class members and the use of the number "313-131," which is an abbreviated telephone number known as an SMS short code, that upon information and belief, is owned by defendant CallFire, a text message marketing company.

40.     The telephone number to which Defendants sent text messages using an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

41.     The complained of text messages had a commercial purposes and, thus, were not made for emergency purposes within the meaning of 47 U.S.C. § 227(b)(1)(A)(i).

42.     Plaintiff and the Class did not provide their "express written consent" to  receive text messages on their cellphones or such messages sent using an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

43.     Defendants did not send text messages to Plaintiff's and the Class' cellphones "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

44. Defendants' transmission of text messages to Plaintiff's and the Class' cellphones was done using an "automatic telephone dialing system," for non-emergency purposes and, in the absence of Plaintiff's prior express written consent, violated 47 U.S.C. §227(b)(1)(A).

45. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

46. As a result of Defendants' negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

47. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future and to prevent any further such text messages being sent to their cellphones.

48. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50. Each Defendant, in doing the acts or omitting to act as alleged in this Count, was acting in the course and scope of its actual or apparent authority pursuant to such agencies; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each agent as principal.

51. At all times relevant, Plaintiff was a natural person residing in the State of Illinois. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

Defendants are, and at all times mentioned herein were "person(s)", as defined by 47 U.S.C. § 153(10).

52.     Notwithstanding the fact that they did not give their express written consent to be called, Defendants sent mass numbers of non-emergency text messages to the cellphones used by Plaintiff and other Class members. The text messages sent by Defendants to the cellphones used by Plaintiff and the Class were made using an "automatic telephone dialing system," or "ATDS", as defined by 47 U.S.C. § 227(a)(1), as such messages were made by a machine with the capacity to store and produce random telephone numbers.

53.     Direct evidence of Defendants' use of an ATDS is within the sole possession of Defendants at this stage, and will therefore only come to light once discovery has been undertaken. Nonetheless, a reasonable inference can be drawn that the text messages described herein were delivered by an ATDS based on the generic content of the text messages, the impersonal advertising content of the message delivered by Defendants who otherwise had no reason to contact Plaintiff, the existence of similar text messages received by other Class members and the use of the number "313-131," which is an abbreviated telephone number known as an SMS short code, that upon information and belief, is owned by defendant CallFire, a text message marketing company.

54.     The telephone number to which Defendants sent the text messages described herein using an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

55.     Plaintiff did not provide her "express written consent" allowing Defendants to send text messages to Plaintiff's or the Class' cellphones using an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

56.    Defendants did not send the text messages at issues to Plaintiff's or the Class' cellphones "for emergency purposes" within the meaning of 47 U.S.C. § 227(b)(1)(A)(i).

57.    Defendants' transmission of text messages to Plaintiff's and the Class' cellphones was done using an "automatic telephone dialing system," for non-emergency purposes and, in the absence of their prior express written consent, violated 47 U.S.C. §227(b)(1)(A).

58.    The foregoing acts of Defendants were willful and knowing violations of the provisions of 47 U.S.C. § 227 *et seq.*, insofar as the text messages were sent intentionally and with knowledge of the prohibitions of the TCPA.

59.    As a result of Defendants' willful and knowing violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of 500.00 in statutory damages for each and every text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60.    Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

61.    Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order and judgment against Defendants as follows:

A.    Awarding Plaintiff and the Class statutory damages in the amount of $500.00 per violation of 47 U.S.C. § 227(b)(1) and allowable interest thereon;

B.    Awarding Plaintiff and the Class statutory damages in the amount of $1,500.00 per willful or knowing violation of 47 U.S.C. § 227(b)(1) and allowable interest thereon;

C.    Enjoining Defendants from further violating 47 U.S.C. § 227(b)(1);

D.      Awarding Plaintiff and the Class their unreimbursed attorneys' fees, costs and expenses;

E.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(b)(2) and (b)(3), and certifying the Class defined herein;

F.      Designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel; and

G.      Granting such other and further relief as the Court deems just.

**VII.    JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  May 15, 2015                              Respectfully submitted,

                                                  KATRINA JOCHAN

                                    By:      s/ William M. Sweetnam
                                                   One of Her Attorneys

                                            William M. Sweetnam
                                            Phil Schlichting
                                            SWEETNAM LLC
                                            100 North La Salle Street, Suite 1010
                                            Chicago, Illinois  60602
                                            (312) 757-1888
                                            wms@sweetnamllc.com
                                            ps@sweetnamllc.com